# Garvin & Co., Inc., Appellant, *v.* Lancaster County et al.

*Deeds—Construction—Circumstances at execution — Construction by parties—Covenants—Building restrictions—Easements—Light and air.*

1. In construing a covenant in a deed, it is proper and sometimes necessary to consider the circumstances under which it was made for the purpose of ascertaining the intention of the parties.

2. Under the wording of the deed in this case, and under the circumstances attending its execution, the court construed a covenant therein as creating an easement of light and air in favor of the grantees and their successors in title.

3. Where buildings had been erected two stories high and no objections made for many years, the court will, in such case, restrict the buildings to the height of the existing structures.

Argued May 17, 1927. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 191, Jan. T., 1927, by plaintiff, from judgment of C. P. Lancaster Co., Trust Book No. 28, page 195, on petition for voluntary judgment, in case of M. T. Garvin & Co. v. Lancaster County and S. G. Zimmerman et al., county commissioners. Modified and affirmed.

Petition under Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840. Before LANDIS, P. J.

The petition of the Supreme Court states the facts.

Judgment for defendants. Plaintiffs appealed.

*Error assigned* was judgment, quoting record.

*Owen J. Roberts* and *F. Lyman Windolph,* for appellant.—The mutual construction of the parties shows a right in appellant to build on its lots between the rear of the dwelling house and the front of the stable at some distance to the west of the line of the premises described in the deed to the County of Lancaster: Hogg v. Bailey, 5 Pa. Superior Ct. 426; Gehman v. Erdman, 105 Pa. 371; Beedy v. R. R., 250 Pa. 51; Keyser v. Real Estate Co., 43 Pa. Superior Ct. 130; Rochester Coal & Iron Co. v. Coal Co., 271 Pa. 394.

The restriction on appellant's land is to be construed strictly against the party seeking to enforce it, and all doubts resolved in favor of the natural right of appellant to exercise untrammeled control of its own land: Binswanger v. Hyman, 271 Pa. 296; Wimer v. Yellin,

286 Pa. 33; Satterthwait v. Gibbs, 288 Pa. 428; Kister v. Reeser, 98 Pa. 1.

*John E. Malone,* with him *J. Roland Kinzer* and *Jacob Hill Byrne,* for appellee.—The conclusion that the easement in question was for light and air is supported by three Pennsylvania cases: Landell v. Hamilton, 175 Pa. 327; Meigs v. Milligan, 177 Pa. 66; Muzzarelli v. Hulshizer, 163 Pa. 643.

PER CURIAM, June 25, 1927:

The deed by which James Evans in 1852 conveyed to the County of Lancaster land within the City of Lancaster as a site for the present county courthouse, which was then about to be erected, contained two special clauses, one of which created an easement comprising a strip of land nine feet wide between the line of the property deeded to the county and the land retained by grantor; in the other clause grantor covenanted that he and his heirs and assigns "shall not at any time forever hereafter erect any building or buildings on his or their property on the line of the hereby granted premises between the rear of the dwelling house and the front of the stable now erected on the adjoining property of the said James Evans." The land in question extends from East King Street, on which the dwelling house and the courthouse face, to Grant Street in the rear, where stood the stable, which has since been replaced by another building; and the nine feet wide easement runs from East King Street between the line of the courthouse wall and the property of plaintiffs, through to Grant Street, which property came into possession of plaintiffs through grants subsequent to the conveyance of 1852. At the time of the original grant the buildings on this property were a three-story brick dwelling house, which remains standing, on the East King Street front, and a stable on the rear of the lot, facing Grant Street. Since then additional low buildings have been constructed be-

tween the dwelling and the structure on the rear. Appellants propose removing the buildings now standing on the property, and erecting in their place a business structure, four stories in heighth on the East King Street end, continuing back six stories high, to a point fifty feet from Grant Street, along the line of the nine feet wide easement. Appellants' right under the deed, to do as it contemplates, is the question for our determination. After hearing on petition filed by appellants under the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, the court below entered a final declaratory judgment to the effect that "no building nor buildings shall be erected on the plaintiffs' property between 'the rear of the dwelling house and the front of the stable,' as these buildings were located at the time the said deed was executed and delivered, as that ground was intended for air and light for the courthouse," and that "under the said grant, the said plaintiff has no right to build a building on its lot four stories high on East King Street and continuing six stories high toward the rear, over the whole of said lot, back to a point fifty feet from Grant Street, as contemplated by it."

Plainly the intent of the parties to the deed was to create an easement, nine feet wide, between the county property and that of grantor; and that the easement remain unobstructed. What plaintiff proposes now to do is to use all the space of its land which lies along its line of the nine feet strip as a site for its proposed business structure. The deed referred to is not ambiguous in its terms, as earnestly contended by appellants, interpreted in the light of the circumstances attending the parties at the time of its execution. To ascertain the intention, resort must be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant: (Landell v. Hamilton, 175 Pa. 327) ; and in construing a deed it is proper and sometimes necessary to consider the circumstances under

which it was made, for the purpose of ascertaining the intention of the parties: Meigs v. Lewis, 164 Pa. 597. In the case at hand we find that in 1852 an imposing county courthouse was about to be erected, land was purchased as a site, and in the deed a nine-foot passage way was reserved and excepted out of the grant to remain open forever. It is not to be assumed that the county authorities and those acting with them, who had the matter in charge and were responsible to the taxpayers for properly carrying the proposed building through, would be so lacking in forethought as to overlook the necessity of providing, not only in their time but also the future, against obstruction of light and air for so important a building as a courthouse. That they certainly foresaw a time might come when projects would be entertained for the construction of buildings upon adjoining land is shown by the reservation of the easement; from existing circumstances and necessities of the situation, they set aside the nine feet wide strip, not only for a passageway, but for the more important purpose of preventing in the future a deprivation of air and light so essential to the health, comfort and efficiency of those occupying the county building. We are therefore in accord with the conclusion of the learned trial judge, as stated in his opinion, that "the purpose of the covenant contained in the deed of James Evans evidently was to give the court house, which was about to be erected, air and light on its west side." We do not however interpret the deed to signify that no buildings may be erected on plaintiffs' land between "the rear of the dwelling house and the front of the stable" in the rear. Under such construction of the deed, the entire property of plaintiff running along the line of the nine feet wide easement would, with the exception of the space occupied by the house on East King Street and the building in the rear, be inhibited from any building improvement whatever. A decree of this character would result in excluding from practical use and improvement an area

of plaintiffs' land of about 4,200 square feet, which, in our opinion, would be a deprivation not justified by the present necessities of the situation. It was not intended, as we construe the Evans deed, that no character of buildings should ever be erected upon that space. As a matter of fact, for many years low structures, apparently from a story to two stories in height have stood on the property adjoining the easement, and there seems to have been no complaint from any source that these structures are or ever have been a hindrance to the free admission of light and air at the west side of the county building. However, while apparent that these low buildings now standing do not constitute such obstruction, it is obvious that a building of four and six stories high, to extend practically along the entire length of the west side of the court house with but a vacant space of nine feet intervening, would certainly become an immediate continuous and effectual hindrance and obstruction to the free entrance of air and light, and result manifestly in a situation detrimental to the health, the efficiency and the comfort of those engaged in the performance of required duties in the county building. We accordingly conclude that appellant has a right to build upon its land adjoining the nine feet wide easement, extending from East King Street to Grant Street in such manner as it may determine, except however on that portion of the property lying between the rear of the dwelling house facing East King Street to within fifty feet of Grant Street, the height of any new structures erected thereon shall not be greater than the buildings now standing on that portion of the property. Thus modified.

The decree of the court below is affirmed at appellants' costs.